No. 20,272.
THE KANSAS FLOUR MILLS COMPANY, *Appellee*, V. A. M.
BRANDT, *Appellant*.

SYLLABUS BY THE COURT.

CONTRACTS—*Breach—Future Delivery of Wheat—Measure of Damages.*
Where one sells wheat in August and agrees to deliver the same
September 15 or any time during the month of September before the
15th, and on September 9 notifies the purchaser that he will not de-
liver the wheat, the purchaser may go on the market at the place of
delivery on September 9 and purchase the amount of wheat con-
tracted for and recover from the seller the difference between the con-
tract price and that paid.

Appeal from Greenwood district court; ALLISON T. AYRES,
judge. Opinion filed July 8, 1916. Affirmed.

*A. F. Sims*, of Howard, for the appellant.

*T. A. Noftzger*, and *George Gardner*, both of Wichita, for the
appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered judgment for $510
damages for failure to deliver wheat sold to the plaintiff. The
defendant appeals.

In August, 1914, the plaintiff purchased of the defendant
3000 bushels of wheat at eighty-three cents per bushel, to be
delivered September 15, 1914, or at any time during the month
of September before the 15th. On September 9 the defendant
notified the plaintiff that he would not deliver the wheat, and
the plaintiff on that day purchased other wheat of the same
grade for $1 per bushel, the then current price at the place of
delivery. On the 15th day of September, 1914, wheat was
worth eighty-two cents per bushel at the same place.

The only question for consideration is, Could the plaintiff
purchase wheat on the 9th day of September and recover the
damage sustained by reason of the difference in price, or must
he wait until the 15th of September and then purchase the
wheat and recover the damage sustained by him? If the latter,
he sustained no loss, because wheat then sold for one cent per

bushel less than he had agreed to pay, and his damage was nominal only. If he had the right to go on the market and purchase the wheat on the day he received notice that the contract would not be complied with, the judgment is correct and should be affirmed.

The plaintiff, when he was notified by the defendant that the wheat would not be delivered, had a right to reduce the damage that he would sustain, by going on the market and buying wheat in amount equal to that the defendant had agreed to sell, and collect the difference in price from the defendant. The authorities say that this should generally be done at the time and place of delivery. (*Stewart v. Power*, 12 Kan. 596; *Mercantile Co. v. Lusk*, 45 Kan. 182, 25 Pac. 646; 35 Cyc. 633.) The damage to the plaintiff was caused by the defendant. He could have prevented damage to the plaintiff by performing the contract on any of the days that he might select. He refused to perform his contract and compelled the plaintiff to adopt such measures as he deemed best to reduce his losses. The defendant ought not to be permitted to cast on the plaintiff the burden of reducing these losses and then say that the plaintiff could have better reduced the losses by purchasing wheat on a different day. The rule ought to be, and we think is, that the plaintiff, when notified by the defendant, had a right to go on the market on that day and purchase an amount of wheat equal to that contracted for and recover from the defendant the difference in price. In *Lumber Co. v. Lumber Co.*, 86 Kan. 131, 119 Pac. 321, the rule is substantially stated in the following language:

"The defendant, however, deprived itself of the benefit of this rule by its answer in which it alleged, and repeated in the most positive terms, that the plaintiff's default occurred on July 9, 1907. This allegation was very material because it fixed the date at which damages were provable and enabled the defendant to take advantage of the high price of shingles at that time. If the defendant desired to stand at all on the notification of November, 1906, that the contract would not be fulfilled the duty rested upon it to mitigate damages by then going into the market and buying shingles, if it were able to do so. In that event the plaintiff might have shown that the defendant could have supplied its needs at prices much below those prevailing the next July, and in the absence of such proof damages were still assessable, not as of July 9, 1907, but as of the true date, when, under the contract, the shingles were to be delivered." (p. 134.)

The headnote to *Shepherd v. Hampton,* 16 U. S. 200, 4 L. Ed. 369, reads:

"In an action by the vendee for the breach of a contract of sale by the vendor, in not delivering the article, the measure of damage is the price of the article at the time of the breach of the contract, and not at any subsequent period."

(See, also, 35 Cyc. 637; *Williams v. De Soto Oil Co.,* 213 Fed. 194; *Craig & Co. v. Pierson L. Co.,* 179 Ala. 535, 538, 60 South. 838; *Kehler v. Einstman,* 38 Ill. App. 91; *Sleuter et al. v. Wallbaum,* 45 Ill. 43; *Follansbee v. Adams,* 86 Ill. 13; *Finch & Co. v. New Ohio W. Coal Co.,* 156 Ill. App. 589, 601; *Louisville Packing Co. v. Crain,* 141 Ky. 379, 132 S. W. 575; *Masterson v. The Mayor &c. of Brooklyn,* 7 Hill (N. Y. Supr. Ct.), 61, 42 Am. Dec. 38; *Boyd v. L. H. Quinn Co.,* 17 Misc. Rep. 278, 40 N. Y. Supp. 370, 18 Misc. Rep. 169, 75 State Rep. 803, 41 N. Y. Supp. 391; *David v. Whitmer & Sons,* 46 Pa. Super. Ct. 307, 311.)

The judgment of the district court is affirmed.